MOTT *v.* WALKLEY.

A mortgagee has equal rights with third persons to purchase in mortgaged premises ; and the lowness of price at which he purchases is no ground to set aside a sale.

Where property passes into third hands on a master's sale, such sale should not be vacated, save for fraud. But where a judgment creditor has heretofore bought in the rights, title and interest of the mortgagor and is recognized as the buyer at the master's sale, but from circumstances he does not pay down deposit (though he went prepared to do so) and the master puts up the property again, refusing to take any biddings from such former buyer and the property is knocked down, at an under price, to the mortgagee, the court will vacate the last sale and reinstate the first bidder.

*October* 25.
1842.

*Mortgagor
and Mort-
gagee.
Opening
sale.*

THIS was a suit to foreclose a mortgage ; and a petition was now presented by one Nathaniel Smith, praying a re-sale under the decree in the cause. By this petition it appeared that the petitioner had obtained judgments against the mortgagor James Walkley ; and, under them, had sold his right, title and interest in the mortgaged premises ; that on the day on which the property was to be sold under the decree, the petitioner made his own arrangements to purchase and, through a friend, to pay the deposit money—and attended the sale with his counsel ; that the petitioner made the first bid of one thousand dollars and, then, the biddings rose to three thousand three hundred dollars ; that the competition during the latter part of the sale was between the petitioner and a son of the complainant, who bid the sum last mentioned ; that, at this stage of the sale, Mr. Evert A. Bancker, who was present at the sale and in consultation with the son of the complainant (and who the petitioner believed was acting professionally for the complainant, although, it appeared, he was present on behalf of the mortgagor Walkley only) came up to the petitioner and inquired, why the petitioner was running the property up ? and stated, that it would be " ruinous to the old man"—meaning the defendant Walkley ; and to which the petitioner replied that he only wished to protect himself and that he should bid to an amount sufficient for that purpose and no more. That after

some further conversation between them, Mr. Bancker intimated his wish to speak to the petitioner more privately than he could surrounded as they were by the bystanders and they accordingly retired to a little distance and after a short conversation they returned and Mr. Bancker then consented that the property should be struck down to the petitioner, the latter agreeing to transfer his bid to Walkley or in any other manner he might wish, provided the petitioner's debt was paid ; that the petitioner then inquired of the said Bancker whether it would be necessary to pay the ten *per cent.* (deposit), to which he replied that it would not and further remarked that the whole matter would be arranged in fifteen days—the petitioner replying that this would be satisfactory. That Mr. Bancker then passed over to where the son of the complainant and the said Walkley were standing together and appeared to be engaged in explaining to them the nature of the arrangement made by him ; that the auctioneer, in the meantime, was calling the bid of the petitioner at three thousand three hundred and five dollars and, after doing so repeatedly and turning particularly to the said Bancker, Walkley and the son of the complainant, and, receiving no additional bid from them nor from any other person, knocked down the property to the petitioner at such last mentioned sum. That the petitioner went over to sign the terms of sale ; and, at the same moment the company assembled, which was numerous, dispersed and left the Exchange and, among them, the petitioner's counsel and the friend who was to have advanced the deposit ; that the petitioner, on going to the master who made the sale, proposed to sign the terms of sale, when such master required him to pay the ten *per cent.*, to which he stated that Mr. Bancker had informed him that it would not be required and also that his counsel and also the friend who was to have laid down the deposit had gone away and the petitioner had not the money with him, but would give his check for the amount. That the master refused to receive any thing but the cash and immediately ordered the auctioneer to put up the property again and which was done—the entire sale commencing anew. That the petitioner then went up to the master and asked him, whether he would receive his bid ? to which he replied that he would not. That the petitioner, accordingly, refrained from

1842.

MOTT
v.
WALKLEY.

bidding ; and the property was, in a very hurried manner, after some four or five bids, struck down to the complainant at thirteen hundred and fifty dollars.   Also that immediately on the master's announcing his determination to put up the property again, the petitioner sent a message to the office of his counsel, who immediately came to the place of the auction and found only the master and Mr. Bancker, Mr. Walkley and the son of the complainant closing the sale—the latter having just signed the conditions as the agent of his father ; and that the petitioner's counsel thereupon remonstrated with the said master and insisted on the sale being opened, but which the master declined to do ; and that such counsel then stated to the parties that he should immediately apply to the court to set aside the sale.   The petitioner also showed that the premises were let at upwards of one thousand dollars a year.

There were opposing affidavits, but they did not vary the above statements in any important particular.

Mr. *Cambreleng*, in support of the application for a re-sale.

Mr. *D. Graham*, contra.

*October* 26.     THE VICE-CHANCELLOR :—The court cannot lose sight of the great disparity between the value of the mortgaged premises and the price at which it was sold—especially as the purchaser is the mortgagee himself.   Still, a sale of property by a master at a low price is no objection, of itself, and furnishes no sufficient ground for setting it aside.

Nor, where every thing is fair and every bidder unshackled, is there any thing in the circumstance of a mortgagee becoming the buyer.   He has equal rights in this respect with any third person ; but circumstances may occur which would authorize a petition to re-open such a sale when it would not be opened if a stranger had become the purchaser.   Chancellor Walworth has referred to the distinction and the principle of it in *Tripp* v. *Cook*, 26 Wend. R. 146.   His honor observes, " where the mortgagee or complainant himself becomes the purchaser, the court has not always held the sale so conclusive, as where the property has been purchased by one who was an entire stranger to the suit who had bid for the purpose

of investment merely ;" and see senator Verplank's remarks in S. C. 158.  See also, *Brown* v. *Frost*, 1 Hoffman's Chancery Rep. 41.

Looking upon the complainant as a mortgagee, there would be no harm done to him by allowing a re-sale so as to secure the amount of bid which Nathaniel Smith made ; for he thus gets paid a larger sum in cash while it would lessen the mortgagor's personal liability.  Here was evidently a *bona fide* intention on the part of Nathaniel Smith to complete his purchase—a preparation too in regard to paying the deposit ; and he was only kept back from completing by the conduct and remarks of Mr. Bancker.  I must look at this case as between a well intentioned interested buyer who has been misled and a mortgagee who has purchased at an under price : and the order to be entered will be that the sale to the complainant be vacated, so as to give the petitioner an opportunity to complete the purchase on his bid ; that he be at liberty to complete the same ; and, that the master then execute a deed to him upon his complying with the terms of sale on which the premises were struck off and sold to him by his paying the ten *per cent.* forthwith and paying the residue of the purchase money to the master within fifteen days after the date of the order to be entered on this decision ; and also that the costs of this motion and of opposing the same be paid out of the purchase moneys to the respective solicitors of the complainant and of the petitioner.